IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AMHERST EXEMPTED VILLAGE SCHOOL DISTRICT BOARD OF EDUCATION, | ) ) ) | CASE NO. 1:07-CV-0920 |
| | ) | |
| Plaintiff, | ) | JUDGE NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE VECCHIARELLI |
| | ) | |
| ALICE CALABRESE, *et al.*, | ) | REPORT AND RECOMMENDATION |
| | ) | DOCKET # 76 |
| Defendants. | ) | |

    This matter is before the magistrate judge on referral.  Plaintiff, Amherst Exempted

Village School Board ("Amherst"), moves for summary judgment against defendant Donald

R. Menefee ("Menefee").  Doc. No. 76.  Menefee does not oppose Amherst's motion.  For

the reasons given below, the court should grant Amherst's motion.

I

    Menefee is deemed to have admitted or does not challenge the following facts.  Prior

to the sixth grade, Angelo Calabrese ("Angelo") was identified as suffering from a Specific

Learning Disability, Attention Deficit Hyperactivity Disorder.  Pursuant to the Individuals with

Disabilities in Education Improvement Act ("IDEIA"), Amherst provided Angelo with a series

of individualized educational programs ("IEPs") designed to accommodate his disability.

In  high  school,  his  IEPs  included  individualized  tutoring  and  extensive  classroom

accommodations.  Angelo's final grades in ninth grade included two Bs, a B-, and a C+;

and Angelo passed the Ohio Graduation Tests in science, math, and reading in the tenth grade.  Angelo failed his tenth grade classes, however.  The administrative hearing officer found that during tenth grade Angelo was absent from school 18½ times, was late 13 times, and failed to turn in or complete a number of assignments and tests.  Angelo's Special Education teacher spoke with Calabrese frequently and exchanged about 40 e-mails with Calabrese about these problems during Angelo's tenth grade year.  Angelo's 11th grade IEP included a plan to correct his behavioral deficiencies.

On July 3, 2006, Alice Calabrese ("Calabrese"), Angelo's mother, began due process proceedings on Angelo's behalf.  Menefee served as her legal counsel.  Calabrese alleged that Amherst had failed to provide Angelo with a free appropriate public education ("FAPE"), but her complaint did not specify any particular shortcoming in Angelo's IEPs.  Calabrese sought reimbursement for tutoring expenses between fifth and tenth grades; compensatory placement at Lawrence School, a private school, at public expense; and transportation to and from Lawrence School.  Calabrese was concerned by her son's recent failing grades, and she began due process proceedings to ensure that Angelo would be able to graduate high school.

On August 24, 2006, Amherst extended a formal offer of settlement to Calabrese pursuant to 20 U.S.C. § 1415(i)(3)(D).[1]  The offer consisted of two years of private school tuition.  Calabrese, through Menefee, rejected Amherst's offer and advanced a counteroffer that included attorney's fees.  Amherst found the counteroffer unacceptable.  On August

---

[1]  Amherst asserrts that it extended the formal settlement offer pursuant to 20 U.S.C. § 1415(i)(3)(D) and Fed. R. Civ. P. 68 ("R. 68").  Amherst errs.  *See discussion, infra* at 13-14.

31, 2006 Amherst extended a second offer, adding transportation to and from the private school and 40 hours of after-school or weekend private tutoring to allow Angelo to make up credits lost due to failed courses in the 10th grade.  Menefee rejected this offer on September 5, 2006.  His rationale in rejecting both offers was that two years of private education was not enough to ensure Angelo's graduation from Lawrence School.

Impartial Hearing Officer ("IHO") Harry H. Taich held a due process hearing on September 27, 2006 and October 4, 2006.  He limited Calabrese's claims to those involving IEPS for the previous two years pursuant to the statute of limitations in the 2004 amendments to the IDEIA.  *See* 20 U.S.C. § 1415(b)(6).  Calabrese presented no evidence of any allegedly reimbursable expenditures for Angelo's education and no evidence that Amherst violated any procedural provision of the IDEIA.  Calabrese's only witnesses were Calabrese and the Dean of Admissions of Lawrence School.[2]  Calabrese testified that she believed Angelo's failures during his freshman and sophomore years were the result of deficiencies in his IEP.  The IHO determined in his final decision that Calabrese had argued that the IEP was deficient merely because Angelo had failed courses.  The final decision pointed out that Angelo's failures had a great deal to do with his own lack of effort.  The IHO determined that the evidence presented by Calabrese fell far short of meeting her burden of proof and that she had offered no witnesses, exhibits, testimony, or other evidence to support her position that Angelo's IEP failed to provide an FAPE.  The IHO further determined that Amherst had given Calabrese due process and had complied with the requirements of the IDEIA by giving Angelo an FAPE.  The IHO therefore denied all of

---

[2]  Angelo was not enrolled in Lawrence School and had not submitted a formal application to the school at the time of Lawrence's testimony.

Calabrese's requests for relief.

Calabrese timely appealed the IHO's decision to State Level Review in January 2007.  Following briefing, the State Level Review Officer ("SLRO") affirmed the decision of the IHO.  In affirming the IHO's decision, the SLRO noted that Calabrese had failed to question any of the IHO's findings of fact, had failed to provide any evidence that Angelo's IEPs had been inappropriate beyond his failure of several classes, and had objected only to the IHO's conclusions.  Calabrese chose not to review further the decisions against her.  Amherst alleges that it spent $35,342.50 in attorney's fees defending itself against Calabrese's due process complaint and appeal.

On March 29, 2007 Amherst filed this action against Calabrese[3] and Menefee for recovery of attorney fees pursuant to 20 U.S.C. § 1415(i)(3)(B)(i)(II)-(III).  Amherst seeks an award of attorney's fees from the date of Amherst's last settlement offer through the conclusion of this action in federal court.  Menefee, an attorney licensed in Ohio, signed a Waiver of Service for Summons on March 29, 2007 and, pursuant to Federal Civil Rule 4(d)(3), his Answer was due sixty days thereafter.

On May 8, 2007, Menefee filed a motion for a 30-day continuance until June 14, 2007 to file his Answer.  The court granted his motion.  Two weeks after the June 14 deadline passed, Menefee moved for an additional continuance of forty-five days.  The court granted in his motion part and ordered him to file an answer no later than July 16, 2007.  Menefee failed to comply with the Court's deadline and also failed to attend a Case

---

[3]  On October 11, 2007, Defendant Calabrese filed a cross-claim and third-party complaint against Menefee.  On February 29, 2008, Amherst moved to dismiss Calabrese as a defendant.

-4-

Management Conference ("CMC") held on July 30, 2007.  On July 31, 2007, Amherst filed a motion for default judgment against Menefee.  On August 15, 2007, a month after his answer was due, Menefee filed a motion for a six week continuance to respond to Amherst's motion.  On August 20, 2007, the court granted Menefee two weeks to file an answer.[4]

Menefee filed his answer on September 4, 2007.  The answer failed to comply with the general rules of pleading in Fed. R. Civ. P. 8(b) by stating in plain terms Menefee's defenses to each claim Amherst asserted or to deny or admit the specific allegations made in the complaint.  On September 17, 2007, Amherst moved for an order deeming the allegations not denied in Menefee's answer should be deemed admitted.  The court issued an order reminding Menefee that Local Rule 7.1(d) required him to respond to Amherst's motion by October 4, 2007.  On October 11, 2007, Menefee filed a response captioned "Motion in Opposition to Plaintiff's Motion for Summary Judgment."  On October 15, 2007, the court granted Amherst's motion and deemed Menefee to have admitted all the averments in the complaint except the first sentence of ¶ 12 and the entirety of ¶¶ 17 and 19.

Amherst moved for summary judgment on February 18, 2008.  Menefee failed timely to file an opposition to Amherst's motion.

II

Summary judgment is appropriate where there are no genuine issues of material fact

_____

[4]  Each motion for a continuance filed by Defendant Menefee avers that he has contracted a bacterial infection that has resulted in blindness in his left eye.  The Court accepts these statements as true.

and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56.   The moving party can meet this burden in two ways: by presenting sufficient evidence to indicate there is no genuine issue of material fact; or by arguing the non-moving party, after adequate time for discovery, has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial.  *See Cox v. Kentucky Department of Transportation*, 53 F.3d 146, 149 (6th Cir. 1995).  The nonmoving party may oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves. . . ," *id.*, or by any other evidentiary material admissible at trial.  *Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir. 1993); *see also* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, 10A, § 2721 (1998).  Conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes.  *Lujan v. National Wildlife Fed'n*, 497 U.S. 871 888-89 (1990).

The trial court has no "duty to search the entire record to establish that it is bereft of a genuine issue of material fact."  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989).  That is, the nonmoving party has an affirmative duty to direct the court's attention to specific evidence upon which it seeks to rely.  *Al-Qudhai'een v. America West Airlines, Inc.*, 267 F. Supp.2d 841, 845 (S.D. Ohio 2003) (citing *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001)).  The lack of such a response by the nonmoving party may result in an

-6-

automatic grant of summary judgment.  *Reeves v. Fox Television Network*, 983 F.Supp. 703, 709 (N.D. Ohio 1997).

When evaluating a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to . . . the party opposing the motion . . . ."  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *see also Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 473 (1962).  In addition, the Court "does not weigh the evidence or make credibility determinations." *Id.*  However, "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986).  In other words, the court should determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251.

III

Amherst moves for summary judgment in this action for attorney's fees pursuant to the IDEIA.

A.      Relevant provisions of the IDEIA

Congress intended the IDEIA is to give children with disabilities a free appropriate public education designed to meet their individual needs.  *Burilovich ex rel. Burilovich v. Bd. of Educ. of the Lincoln Consol. Sch.*,  208 F.3d 560, 565 (6th Cir. 2000).  School districts receiving funds under the IDEIA must create an IEP for each child with a disability.  *Deal v. Hamilton County Bd. of Educ.*, 392 F.3d 840, 853 (6th Cir. 2005).  An IEP must "contain a specific statement of the child's current performance levels, the child's short-term and

long-term goals, the educational and other services to be provided, and criteria for evaluating the child's progress."  *Id.* (quoting *Knable ex rel. Knable v. Bexley City Sch. Dist.,* 238 F.3d 755, 762 (6th Cir. 2001)).

The EHA does not require states "to maximize the potential of each handicapped child commensurate with the opportunity provided nonhandicapped children.  Desirable though that goal might be, it is not the standard that Congress imposed upon States which receive funding under the Act."  *Rowley*, 458 U.S. at 200.  Rather the Supreme Court has found that the "'basic floor of opportunity' provided by the Act consists of access to specialized instruction and related services which are individually designed to provide educational benefit to the handicapped child."  *Id.* at 201.  If a school district gives a handicapped student individualized instruction and related services "sufficient to confer some educational benefit upon the handicapped child," *id.* at 200, it has satisfied its obligation under the Act.

A public school may, in its discretion, place a child in a private school as a means of providing an FAPE and fulfilling its obligations under the IDEIA.  20 U.S.C. § 1412(a)(10)(B)(i)-(ii).  A public school is not obligated to reimburse parents who unilaterally remove a child from the public school to a private school if the public school was providing the child an FAPE prior to the removal.  20 U.S.C. § 1412(a)(10)(C).

The IDEIA imposes many procedural requirements on participating states.  Title 20 U.S.C. § 1415 ("§ 1415") governs the procedures by which schools provide an FAPE.  The IDEIA requires, *inter alia*, that meetings for developing, reviewing, and revising an IEP must be held at least once a year to update the IEP.  34 C.F.R. § 300.343.  One or both parents should participate in these meetings.  *Id.* at § 300.344.  Moreover, the parents or guardians

-8-

of a disabled child must be notified of any proposed change in "the identification, evaluation, and educational placement of the child, or the provision of a free appropriate public education to such child," and that they be permitted to raise a complaint about any matter relating to the evaluation and educational placement of the child. § 1415(b)(1), (6).

Parents may file a complaint about any matter related to a child's FAPE occurring not more than two years prior to the time the parents knew or should have known about the alleged deficiency in the child's FAPE. § 1415(b)(6)-(7).  When parents file a complaint regarding their child's FAPE, the parties conduct a preliminary meeting to try to resolve the complaint. § 1415(f)(1)(B)(i)(IV).  If the complaint is not resolved, the parents may request "an impartial due process hearing" conducted either by the state educational agency or the local educational agency, or an intermediate educational unit, as determined by state law. § 1415(f).  The hearing officer must issue a decision that is strictly limited in scope.  In general, the hearing officer may only determine whether the child received an FAPE.  If the parents allege a procedural violation,

> a hearing officer may find that a child did not receive a free appropriate public education only if the procedural inadequacies--
>
> (I) impeded the child's right to a free appropriate public education;
>
> (II) significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to the parents' child; or
>
> (III) caused a deprivation of educational benefits.

1415(f)(3)(E)(ii).  If the due process hearing is conducted by a local or intermediate educational agency, parents dissatisfied with the outcome of the hearing are entitled to an impartial review of the decision of the hearing officer by the state educational agency.

-9-

1415(g).

Parents dissatisfied with the outcome of the state educational agency's review may bring a civil action in a federal district court to address their grievances.  § 1415(i)(2).  Court review of a state agency decision made pursuant to the IDEIA is limited to making two determinations:  (1) whether the school system has complied with the procedures set forth in the IDEIA, and (2) whether the IEP developed through those procedures was reasonably calculated to enable the child to receive educational benefits.  *Deal*, 392 F.3d at 853-54.  "If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more."  *Rowley,* 458 U.S. at 207.  Parents have the burden of proving by a preponderance of the evidence that the school district's IEP was not calculated to enable the child to receive educational benefits.  "If the procedural requirements of the IDEIA are met, greater deference is to be afforded to the district's placement decision."  *Deal*, 392 F.3d at 854 (quoting *Dong ex rel. Dong v. Bd. of Educ. of the Rochester Cmty. Sch.*, 197 F.3d 793, 800 (6th Cir. 1999)).  A court finding that a school's IEP was not reasonably calculated to enable the child to receive educational benefits is empowered to "grant such relief as the court determines is appropriate."  § 1415(i)(2)(C)(iii).

B.     *The IDEIA and Amherst's action for attorney's fees*

The IDEIA allows courts to award attorney's fees to a prevailing party in an action brought pursuant to § 1415(i)(2).  20 U.S.C. § 1415(i)(3)(B).  This includes awarding attorney fees to a state educational agency:

> In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs--

-10-

(I) to a prevailing party who is the parent of a child with a disability;

(II) to a prevailing party who is a State educational agency or local educational agency against the attorney of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation, or against the attorney of a parent who continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation; or

(III) to a prevailing State educational agency or local educational agency against the attorney of a parent, or against the parent, if the parent's complaint or subsequent cause of action was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation.

§ 1415(i)(3)(B)(i).[5]

---

[5]     Amherst also argues that it should be awarded attorney's fees from the date of its settlement offers to Calabrese because it made those offers pursuant to § 1415(i)(2)(D)(i) and R. 68 and Calabrese eventually obtained less than Amherst offered her.  Section 1415(i)(2)(D)(i) provides as follows:

Attorneys' fees may not be awarded and related costs may not be reimbursed in any action or proceeding under this section for services performed subsequent to the time of a written offer of settlement to a parent if--

**(I)** the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins;

**(II)** the offer is not accepted within 10 days; and

**(III)** the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement.

Amherst's argument ignores the plain language of § 1415(i)(2)(D)(i).  Section 1415(i)(2)(D)(i)  does not require the party declining a settlement offer to pay the other party's attorney's fees.  Rather, it merely prevents the party declining the offer from obtaining attorney's fees from the opposing party.  Section 1415(i)(2)(D)(i) incorporates only the time limit specified at R. 68, not the rule's cost-shifting provision.

Amherst also seeks an award of attorney's fees pursuant to R. 68.  Rule 68 provides that if a party makes an offer of judgment more than ten days before trial and the offeree fails to obtain a judgment more favorable than the declined offer, the offeree must pay the other party's costs incurred after making the offer.  Attorney's fees are awardable as "costs" pursuant to Rule 68 only when the underlying statute in the action defines them as "costs" or when an underlying contract defines them as awardable costs.  *Marek v. Chesny*, 473

-11-

1.    *Attorney's fees for defense against the administrative action*

Amherst argues that as the grounds for pursuing a case under the IDEIA are well-settled, Menefee prosecuted his client's case frivolously, unreasonably, and without any legal foundation.    Amherst cites, *inter alia*, *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412 (1978); *Taylor P. ex rel. Chris P. v. Missouri Dept. of Elementary and Secondary Educ.*, 2007 WL 2907825 (W.D. Mo. Oct. 3, 2007); and *R.W. ex rel M.W. v. Georgia Dept. of Educ.*, 2007 WL 2915911 (N.D. Ga. Oct. 4, 2007),[6] as support for its contention that the court should award it attorney fees from Menefee.

In *Christiansburg*, the Supreme Court weighed the standard that should be used when deciding whether to award fees in a Title VII case to a prevailing defendant.  The court wrote as follows:

> [A] district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.

U.S. 1, 5-9 (1985); *McCain v. Detroit II Auto Fin. Ctr.*, 378 F.3d 561, 563-64 (2004).  The IDEIA does make attorney's fees part of "costs."  *See* 20 U.S.C. 1415(i)(3)(B)(i)(II). Moreover, R. 68 is a procedural rule governing actions in federal courts.  At the time of Amherst's offer, the parties were not in federal court.  Amherst cites no caselaw to support the proposition that R. 68 applies to offers of settlement made prior to initiating an action governed by the Federal Rules of Civil Procedure.

[6] Amherst also suggests looking to Ohio Rev. Code § 2323.51, Fed. R. Civ. P. 11 ("R. 11"), and the standards for awarding fees in federal civil rights cases for guidance in interpreting the fee-shifting provisions of § 1415.  The court sees no reason why federal law should be guided by state law and also believes that R. 11 standards are applicable only to a motion for sanctions pursuant to R. 11.  The standards for awarding fees in federal civil rights cases provide some guidance to the fee-shifting provisions of § 1415, but only with the caveats expressed by the Supreme Court in *Christiansburg*.

-12-

In applying these criteria, it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

That [Title VII] allows fee awards only to *prevailing* private plaintiffs should assure that this statutory provision will not in itself operate as an incentive to the bringing of claims that have little chance of success. To take the further step of assessing attorney's fees against plaintiffs simply because they do not finally prevail would substantially add to the risks inhering in most litigation and would undercut the efforts of Congress to promote the vigorous enforcement of the provisions of Title VII. Hence, a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so. And, needless to say, if a plaintiff is found to have brought or continued such a claim in *bad faith*, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense.

*Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 421-22 (1978) (footnote omitted).

In *Taylor P. ex rel. Chris P. v. Missouri Dept. of Elementary and Secondary Educ.*, 2007 WL 2907825 (W.D. Mo. Oct. 3, 2007), the parents of a disabled child were denied reimbursement for the child's private school placement when they failed to notify the school district that they intended to remove the child from public school. The school district gave the parents caselaw showing that they probably would not be reimbursed for the private school placement under these circumstances. The parents nevertheless persisted in their IDEIA claim. The court denied the school district's action for attorney's fees, finding that, although it was unlikely that the parents would have prevailed in obtaining reimbursement,

-13-

an award of reimbursement was nevertheless within the adjudicator's discretion. The court concluded, therefore, that the parents' suit was not frivolous, unreasonable, without foundation, or presented for an improper purpose.

In *R.W. ex rel M.W. v. Georgia Dept. of Educ.*, 2007 WL 2915911 (N.D. Ga. Oct. 4, 2007), however, the court awarded attorney's fees to the school district against plaintiffs' attorney. Plaintiffs' attorney filed an IDEIA action not only against the child's school district but also against the Georgia Board of Education, members of the Georgia Board of Education, the Georgia Department of Education, the state superintendent of education, and the Office of State Administrative Hearings. Plaintiffs' counsel had been warned in two previous IDEIA actions that the state defendants were not proper defendants in an IDEIA suit. In awarding attorney's fees, the court found, "Plaintiffs' counsel knew that no legal foundation existed to include the [state defendants] in her Complaint. Plaintiffs' counsel cites no authority or new argument to justify her inclusion of these defendants again in this case." *Id.* at *6.

Amherst argues that Menfee's prosecution of the administrative action against the school board was frivolous because Menefee failed to investigate his client's claims sufficiently to learn that they were frivolous and prosecuted the action without any relevant evidence to support his client's position.

Amherst contends that had Menefee adequately investigated his client's claims he would have discovered the e-mails between Calabrese and Angelo's Special Education teacher indicating that Angelo's problem was a lack of effort and misbehavior rather than faulty instruction. Amherst's point is not well-taken, particularly as Amherst offers no evidence that the e-mails in question still existed at the time Menfee began his

-14-

representation of Calabrese.

Amherst's argument that Menefee's prosecution of the administrative action was frivolous because he had no evidence to support that action has some merit.  Anyone seeking to prove that Angelo did not receive instruction "sufficient to confer some educational benefit" upon him in his ninth and tenth grade classes faced some formidable obstacles:  Angelo's final grades in ninth grade included two Bs, a B-, and a C+; and Angelo passed the Ohio Graduation Tests in science, math, and reading in the tenth grade. Menefee did little to surmount these obstacles.  The IHO found that Calabrese's unsupported testimony was the only evidence offered to show that Amherst failed to provide Angelo an FAPE.  Upon review, the SLRO determined that Calabrese had failed to question any of the IHO's findings of fact and failed to provide any evidence that Angelo's IEPs had been inappropriate beyond his failure of several classes. In addition, at no stage of Calabrese's administrative proceedings did plaintiff's counsel allege a procedural deficiency in the process given Calabrese.

Menefee's pursuit of "reimbursement" from Amherst for alleged educational expenses also lacked substantiation.  At no time during either administrative proceeding did Calabrese present any evidence of allegedly reimbursable expenditures for Angelo's education.[7]

---

[7]  Amherst further argues that it should be awarded attorney's fees because Menefee's continued prosecution of the administrative action against Amherst after Amherst had made its settlement offers was frivolous, without legal foundation, and unnecessarily protracted the proceedings. According to Amherst, its offer of two years of private schooling, transportation to and from school, and forty hours of tutoring was more than Calabrese could have obtained had her administrative action been successful.  The most Calabrese could have obtained, Amherst contends, was two years of private schooling.  Thus, there was no legal foundation for continued prosecution of the case to

In sum, Amherst makes two meritorious arguments to support its contention that it should be awarded attorney's fees because Menefee's prosecution of the administrative action was frivolous: (1) At the due process hearing, Menefee did not challenge any procedure that Amherst offered Calabrese and failed to offer any evidence beyond Calabrese's unsupported opinion that Amherst did not provide Angelo with an FAPE; and (2) on appeal, Menefee did not challenge any procedure that Amherst offered Calabrese and failed to challenge any of the IHO's factual findings. Menefee showed dubious judgment at every stage of his administrative action against Amherst. However, Menefee's continued prosecution of the administrative action by demanding an impartial review of the decision of the hearing officer despite (1) offering no challenge to any of Amherst's procedures, (2) failing to challenge a single factual finding in the hearing officer's decision, and (3) a clear record of some educational achievement by Angelo in his ninth and tenth grade years, was unconscionable. In this respect, Menefee's prosecution of the

_____

obtain more than was offered. Amherst also avers that it only made this offer because it was equal to the costs of litigating Calabrese's claim.

The court will not consider this argument because it runs counter to the public policy favoring compromise. *See* Fed. Evid. R. 408, notes to 1972 Proposed Rules. In any case, even if the court were to consider this argument, it would be unavailing. Amherst's argument fails because Amherst offers no legal support for its contention that Calabrese could not have obtained more than two years of private schooling had her administrative case succeeded. Neither § 1415 nor Sixth Circuit caselaw specifies what remedies an IHO or an SLRO may impose for failure to provide an FAPE or failure to provide due process. Amherst cites caselaw from other circuits to support the proposition that Calabrese was not necessarily entitled to two years' private schooling even if Calabrese had prevailed. But that caselaw addresses what a court may award a litigant prosecuting a civil action pursuant to § 1415(i)(2), not what an IHO or SLRO way award in an administrative action. Amherst also offers the hearsay testimony of one of the school district's special education advisors that before Calabrese's due process hearing, the IHO told the parties that he was unable to award Angelo more than one year of private schooling. Beyond the problem of hearsay, the IHO's basis for making this assertion is not specified in the record.

-16-

administrative action against Amherst was frivolous, unreasonable, and without legal foundation.  Under these circumstances, an award of attorney's fees to Amherst for defending against Calabrese's appeal of the decision of the hearing officer is appropriate.

> 2.      *Attorney's fees for pursuing the federal action*

Amherst also argues that Menefee should pay its attorney's fees incurred prosecuting this action against Menefee.  Civil actions to seek attorney's fees in federal court are brought pursuant to § 1415(i)(2), and 20 U.S.C. § 1415(i)(3)(B) gives federal courts discretion to award attorney's fees to an educational agency in any action brought pursuant to 20 U.S.C. § 1415.  *See also Gross ex rel. Gross v. Perrysburg Exempted Village School Dist.*, 306 F. Supp. 2d 726, 742-43 (N.D. Ohio 2004); *Moore v. Crestwood Local Sch. Dist.,* 804 F. Supp. 960, 969-70 (N.D. Ohio 1992).  Thus, the court has the discretion to award Amherst attorney's fees for its civil action against Menefee in this court.

C.      *The amount of the award*

Amherst has submitted billing information regarding its attorney's fees at the state administrative level and in prosecuting the current action in federal court.  *See* Doc. No. 89.[8]  Menefee has filed no objection to the propriety of any billed event or to the reasonableness of the amounts billed.

Two documents are relevant to determining Amherst's attorney's fees related to its defense against Calabrese's appeal of the decision of the hearing officer.  The pre-bill

---

[8]    Amherst also alleges that it incurred $18,992.35 in costs for the IHO, court reporter's fees, and other costs and seeks an award of these costs.  *See* § 1415(e)(2)(D) (requiring school districts to pay the cost of litigating due process complaints).  Amherst points to no provision of the IDEIA or any caselaw that would allow it to shift these costs to Menefee.

worksheet of January 25, 2007 includes an entry for attorney's fees charged for work done on January 18, 2007 related to correspondence with Calabrese regarding the State Level Review.  The fee billed for these activities was $450.00.  Also, the pre-bill worksheet for March 12, 2007 includes entries for attorney's fees charged for work done on January 21, 2007; January 22, 2007; January 23, 2007; February 2, 2007; and February 5, 2007 related to the State Level Review.  The total amount billed for work done on these dates was $2,520.00.  The total for attorney's fees charged for work related to Amherst's defense against Calabrese's appeal of the decision of the hearing officer, therefore, is $2,970.00.  These fees are entirely reasonable for the work done.

Amherst also details $40,742.50 in attorney's fees for work done at the district court level up to March 17, 2008.  While it cannot be said that these fees are unreasonable, Menefee should not be held liable for all of these fees, for two reasons.  First, the IDEIA is a remedial statute.  Its purpose is to ensure that school districts properly and efficiently address the education of disabled students.  Administrative and civil actions against recalcitrant school districts are a necessary part of the statute's enforcement mechanism.  Too large an award to a school district against a plaintiff's attorney might deter other attorneys from pursuing meritorious cases.  This would be inconsistent with the purposes of the IDEIA.  Second, an award of attorney's fees incurred for the purpose of seeking an award of attorney's fees should not be too large a multiple of the award of attorney's fees incurred in defending against the underlying action.  Otherwise, the court risks encouraging attorneys to view the secondary action as the pre-eminent stage of proceedings brought pursuant to the IDEIA.  Thus, Amherst is entitled to an award of attorney's fees but not for the amount requested.

-18-

For the foregoing reasons, in determining the proper amount to award in attorney's fees for pursuing the action in this court, the court should apply a multiplier between three times and five times the $2,970.00 in fees Amherst expended in defending the administrative appeal of the IHO's decision.  An award of $10,000 to Amherst against Menefee for attorney's fees incurred in pursuing this action for attorney's fees in federal court is appropriate and reasonable.  This figure is a multiplier of approximately 3 1/3 times the attorney's fees incurred by Amherst in defending the administrative appeal and is sufficient to deter frivolous conduct without undermining the remedial purpose of the IDEIA.

IV

For the reasons given above, the court should grant Amherst's motion for summary judgment and award it $2,970.00 for defending against the appeal of the decision of the hearing officer and $10,000 for pursuing the action in this court.  Furthermore, in its final judgment, the court should impose upon Menefee Amherst's cost incurred in this current action, as enumerated in R. 54(d)(1) and 28 U.S.C. § 1920.


Dated:  June 19, 2008                    /s/ Nancy A. Vecchiarelli
                                         Nancy A. Vecchiarelli
                                         United States Magistrate Judge

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after being served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v.Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**